Docket No. 85063–Agenda 32–September 1998.

KEITH VAN HORNE, Appellee, v. MATTHEW “MANCOW” 

 MULLER (Irma Blanco 
et al.
, Appellants).

Opinion filed December 3, 1998.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Keith Van Horne, brought this action in the circuit court of Cook County to recover damages for injury to his reputation resulting from allegedly defamatory statements made by radio deejay Matthew “Mancow” Muller (Muller) and his cobroadcaster Irma Blanco (Blanco). Plaintiff asserted claims for defamation 
per se
 against Muller and Blanco as well as WRCX Radio (WRCX), the radio station employing Muller and Blanco, and Evergreen Media Corporation (Evergreen), the owner of the radio station. The complaint also asserted claims against WRCX and Evergreen for negligent and reckless hiring, supervision and retention of Muller. The circuit court dismissed the defamation claim against Blanco and the negligent and reckless hiring, supervision and retention claims against WRCX and Evergreen. The appellate court reversed the circuit court's dismissal of those counts. 294 Ill. App. 3d 649. We granted a petition for leave to appeal filed by Blanco, WRCX and Evergreen. 166 Ill. 2d R. 315. We now affirm in part and reverse in part the appellate court's judgment.

BACKGROUND

The statements giving rise to this action were made during the November 11, 1994, broadcast of “Mancow Muller's Morning Madhouse,” a radio program aired weekday mornings on WRCX. Defendant Muller was the host of the program and defendant Blanco was Muller's “sidekick” and newscaster. According to Van Horne's complaint, during the broadcast, Muller repeatedly made statements to the effect that Van Horne had threatened and assaulted Muller earlier that morning. The complaint sets forth lengthy and detailed excerpts from the transcript of the broadcast. We will not recount all of the detailed comments contained in the complaint. In sum, on numerous occasions and in colorful detail, Muller stated that Van Horne had been waiting for him at the elevator bank outside the WRCX studio; that Van Horne chased him and threatened his life; and that Van Horne was, among other things, “out of control,” “extremely violent,” “psychotic,” “a danger to society” and “trained in killing people,” and “needs to be locked up.”

According to the complaint, defendant Blanco engaged in “banter” with Muller about his encounter with Van Horne throughout the broadcast in which she contributed to and supported Muller's accounts of the alleged altercation. Blanco also reported Muller's account of the incident as a news item in her news broadcasts that morning.

The complaint alleged that Muller's statements imputed that Van Horne had engaged in criminal conduct and that the statements were therefore defamatory 
per se
. The complaint further alleged that the statements were false, and that Muller acted with actual malice in making the statements because Muller knew the statements to be false when he made them.

As ultimately amended, the complaint contained eight counts. Count I asserted a claim for defamation 
per se
 against Muller. Count II asserted a claim for defamation 
per se
 against Blanco. Count III charged WRCX with defamation 
per se
 on the ground that WRCX published Muller's and Blanco's false statements by broadcasting them over the public airwaves. Count IV charged Evergreen with defamation 
per se
 under a theory of vicarious liability for the acts of its agents, WRCX, Muller and Blanco. Counts V and VI asserted claims against WRCX and Evergreen for negligent and reckless hiring of Muller. Count VII and VIII asserted claims that WRCX and Evergreen negligently and recklessly supervised and retained Muller.

The circuit court denied the defendants' motion to dismiss the defamation 
per se
 counts against Muller, WRCX and Evergreen. The court granted, pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 2/615 (West 1994)), the defendants' motion to dismiss the defamation 
per se
 count against Blanco. The circuit court also dismissed the negligent and reckless hiring, supervision and retention counts against WRCX and Evergreen, apparently on the ground that these causes of action require a physical injury.

Plaintiff appealed and the appellate court reversed. The appellate court held that plaintiff had adequately pled that Blanco participated in the publication of Muller's defamatory statements. The appellate court further found that dismissal of this count was erroneous because Blanco published statements that were defamatory 
per se
. The appellate court next held that the circuit court erred in dismissing the negligent and reckless hiring, supervision and retention counts. The appellate court concluded that these causes of action do not require an allegation that the plaintiff has sustained a physical injury. 294 Ill. App. 3d 649.

We accepted a petition for leave to appeal filed by Blanco, WRCX and Evergreen (hereinafter defendants). 166 Ill. 2d R. 315. We subsequently allowed a group of broadcasters, publishers, editors and reporters to file an 
amicus curiae
 brief in support of defendants' position.

Plaintiff filed a motion in this court to strike a portion of defendants' reply brief. That motion was taken with the case. We have reviewed the challenged portion of defendants' reply brief and we find no reason to strike it. Plaintiff's motion is therefore denied.

ANALYSIS

The circuit court granted defendants' motion to dismiss counts II and V through VIII pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1994)). A motion to dismiss under section 2–615 attacks the legal sufficiency of the complaint. 
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86 (1996). In ruling on such a motion, the court must accept as true all well-pleaded facts and reasonable inferences therefrom. 
Bryson
, 174 Ill. 2d at 86. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover. 
McGrath v. Fahey
, 126 Ill. 2d 78, 90 (1988).

Defamation Claim Against Blanco

Defendants argue that the appellate court erred in reversing the dismissal of count II of plaintiff's complaint. Count II is directed solely at Blanco and purports to state a cause of action for defamation 
per se
. Count II realleges all of the allegations made against Muller in count I. Count II then sets forth in great detail a number of examples of Blanco's “banter” with Muller in which she allegedly “contributed to and supported Muller's accounts of his alleged altercation with Van Horne.” For example, the complaint alleges that, after Muller stated that Van Horne would have hurt him had no one else been present during the altercation, Blanco responded, “If it was just the two of you, I really believe that.” Blanco also stated, in response to Muller's reiteration of the story, “It happened this morning just as you were getting out of the elevator. It's almost as if he was waiting for you. *** Threatening.”

In addition, count II alleges that, during each of her morning news broadcasts, Blanco reported Muller's false account of his encounter with Van Horne as news. The news report by Blanco, as recounted in count II, stated the following:

“For Mancow's Morning Madhouse, I'm Irma Blanco and here's the latest brought to you by Circuit City. Keith Van Horne's violent side was shining through this morning shortly after 5:00 a.m. in the John Hancock building. Former Bears lineman Van Horne, who is already in a little bit of trouble for allegedly hitting a woman at a gas station, literally ran into Mancow at the elevators in the building, with a near brawl with Van Horne threatening Mancow's life, calling him names, and even talking about a lawsuit. The whole thing fizzled out when Mancow graciously offered Van Horne time on the show this morning to air out the differences. Van Horne refused and left the building.”

The complaint alleges that Blanco's “ `factual' accounts, news reports, and participation in Muller's defamatory statements” falsely accused Van Horne of criminal conduct and were therefore defamatory 
per se
. The complaint also alleges that Blanco acted with actual malice.

We agree with the appellate court that the allegations of count II are sufficient to state a cause of action for defamation 
per se
 against Blanco. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with them. 
Bryson
, 174 Ill. 2d at 87; 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 10 (1992). Certain limited categories of defamatory statements are deemed actionable 
per se
 because they are so obviously and materially harmful to the plaintiff that injury to the plaintiff's reputation may be presumed. A plaintiff need not plead or prove actual damage to their reputation to recover for a statement that is actionable 
per se
. 
Bryson
, 174 Ill. 2d at 87. Illinois law recognizes five categories of statements which are considered actionable 
per se
: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication. 
Bryson
, 174 Ill. 2d at 88-89.

In this case, plaintiff has alleged that the statements made by Muller and Blanco were defamatory 
per se
 because they impute that plaintiff committed criminal conduct. As noted, plaintiff's claims for defamation
 per se 
against Muller, WRCX, and Evergreen, based on Muller's statements, were sustained by the circuit court. Plaintiff argues that the appellate court correctly held that his claim against Blanco should also be sustained because she contributed to and participated in the publication of the defamatory statements about plaintiff. We agree.

In general, “[a]ll persons who cause or participate in the publication of libelous or slanderous matters are responsible for such publication.” 33A Ill. L. & Prac. 
Slander and Libel
 §83, at 89 (1970). Count II sets forth sufficient facts to support a cause of action against Blanco for her participation in the publication of the allegedly false statements about plaintiff. Plaintiff has pled facts which demonstrate that Blanco was an active participant in the publication of Muller's allegedly false account of his encounter with plaintiff. The trial court has already ruled that Muller's statements about plaintiff will support an action for defamation 
per se
. Blanco made several statements affirming Muller's version of the encounter, agreeing with his description of plaintiff's conduct, and even going so far as to confirm that it was not a prearranged “stunt.” In addition, in her newscasts, Blanco repeatedly reiterated Muller's statements about his encounter with plaintiff. A statement need not state the commission of a crime with the particularity of an indictment to qualify as defamatory 
per se
. 
Kirchner v. Greene
, 294 Ill. App. 3d 672, 680 (1998). The crime of assault is committed when a person engages in unlawful conduct which places another in reasonable apprehension of receiving a battery. 720 ILCS 5/12–1(a) (West 1994). According to the allegations of the complaint, Muller and Blanco both participated in the publication of an allegedly false story which imputed that plaintiff committed an assault on Muller. We therefore hold that the circuit court erred in dismissing count II for failure to state a cause of action.

Negligent and Reckless Hiring, Supervision and Retention

Defendants next assert that the appellate court erred in reversing the dismissal of counts V through VIII of plaintiff's complaint. Counts V through VIII purport to allege claims for negligent and reckless hiring and negligent and reckless supervision and retention against WRCX and Evergreen.

Counts V and VI reallege plaintiff's defamation allegations and claim that WRCX and Evergreen had a duty to exercise reasonable care in the hiring of disc jockeys “who will not recklessly or intentionally cause harm to Van Horne and other third parties via the public airwaves.” These counts further allege that, before WRCX and Evergreen hired Muller, Muller had engaged in a course of conduct during his radio broadcasts which constituted “outrageous, irresponsible, reckless, and malicious behavior,” and that his behavior “received widespread media attention and proximately resulted in harm to third persons.” Counts V and VI list the following examples of Muller's prior conduct: obstructing traffic for several hours on a San Francisco bridge so that his sidekick could get a haircut in a van stopped on the bridge; broadcasting that the Golden Gate Bridge toll had risen from $3 to $5 causing many listeners to overpay their tolls; hanging a “Welcome to Chicago” banner over the receiving gates during the Christmas rush at San Francisco International Airport and watching travelers panic as they exited the airplane; dropping cinder blocks off a California overpass and causing damage to cars parked below; harassing a host of a local television program by calling her “fat” and “unprofessional” over the public airwaves; causing listeners to storm the San Francisco State University library by announcing that $500 was hidden in a book; and designating “Alzheimer's Awareness Day” and visiting a geriatric center to mock aged individuals over the public airwaves.

Counts V and VI allege that WRCX and Evergreen knew or should have known of Muller's prior conduct when they hired him. Count V alleges that WRCX and Evergreen were negligent in hiring Muller with this knowledge and that their negligence permitted Muller to defame Van Horne over the public airwaves. Count V seeks compensatory damages for the harm caused to plaintiff by Muller. Count VI alleges that WRCX and Evergreen acted in reckless disregard of Muller's history in hiring him and seeks punitive damages in excess of $5 million.

Counts VII and VIII are premised on WRCX's and Evergreen's supervision and retention of Muller. Both counts reallege plaintiff's defamation allegations and claim that the defendants had a duty to supervise their disc jockeys and to refrain from retaining a disc jockey who, by continued employment, would recklessly or intentionally cause harm to plaintiff or other third persons via the public airwaves. Counts VII and VIII allege that, since WRCX and Evergreen hired Muller, he has continued to engage in “outrageous, irresponsible, reckless, malicious and illegal conduct in the course of his radio broadcasts which has harmed third persons.” Counts VII and VIII list the following examples of Muller's conduct: declaring “Roadkill Tuesday” and offering money to listeners who left dead animals at a mall, which resulted in listeners depositing rotting animal carcasses at the mall; offering female listeners money to ride the public transit system topless; and directing his sidekick, “Turd,” to stand on the North Avenue bridge over Lake Shore Drive with a sign that read “Honk and we'll drop a cinder block.” Count VII charges defendants with negligence in their failure to supervise Muller and in their continued employment of Muller, and seeks compensatory damages. Count VIII characterizes defendants' actions as reckless and seeks punitive damages.

Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons. See 
Johnson v. Mers
, 279 Ill. App. 3d 372, 376 (1996); 
Carter v. Skokie Valley Detective Agency, Ltd.
, 256 Ill. App. 3d 77, 80 (1993); 
Bates v. Doria
, 150 Ill. App. 3d 1025, 1030 (1986). An action for negligent hiring or retention of an employee requires the plaintiff to plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury. 
Mueller v. Community Consolidated School District 54
, 287 Ill. App. 3d 337, 341-42 (1997); 
Fallon v. Indian Trail School, Addison Township School District No. 4
, 148 Ill. App. 3d 931, 935 (1986). An employer's direct liability for negligent hiring and retention is distinct from its 
respondeat superior
 liability for the acts of its employees. 
Bates
, 150 Ill. App. 3d at 1031. Under a theory of negligent hiring or retention, the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee, rather than the employee's wrongful act. 
Young v. Lemons
, 266 Ill. App. 3d 49, 52 (1994); 
Carter
, 256 Ill. App. 3d at 80.

Defendants contend that the type of injury claimed in this case, injury to plaintiff's reputation by means of allegedly defamatory statements, is not the type of injury that will support a cause of action for negligent hiring or retention. As defendants point out, the Illinois cases recognizing these causes of action have generally involved some form of physical injury to the plaintiff or his property. For example, in 
Easley v. Apollo Detective Agency, Inc.
, 69 Ill. App. 3d 920 (1979), the defendant security agency hired a security guard to guard the plaintiff's building who used his employer-provided passkey to enter the plaintiff's apartment and assault her. Similarly, in 
Malorney v. B&L Motor Freight, Inc.
, 146 Ill. App. 3d 265 (1986), the plaintiff was raped and beaten by a truck driver whose prehiring record showed that he had a history of violent sex crimes, including raping two teenagers while driving a truck for another company. Likewise, in 
Mueller v. Community Consolidated School District 54
, 287 Ill. App. 3d 337 (1997), the plaintiff, a junior high school student, was sexually assaulted by a wrestling coach whom the defendant school district had employed even though he had a criminal background exhibiting “moral turpitude.” See also 
Carter v. Skokie Valley Detective Agency, Ltd.
, 256 Ill. App. 3d 77, 79 (1993) (employee murdered, raped and kidnapped plaintiff's decedent); 
Bryant v. Livigni
, 250 Ill. App. 3d 303, 305 (1993) (employee physically attacked child); 
Gregor v. Kleiser
, 111 Ill. App. 3d 333, 338-39 (1982) (employee physically attacked plaintiff). Based on this case law, defendants assert that a plaintiff may maintain an action for negligent hiring or retention only where the plaintiff has suffered a physical injury.

Defendants further assert that recognition of a cause of action for negligent hiring or retention of an employee based on the employee's defamatory statements would violate first amendment principles. Defendants argue that holding employers liable for hiring or retaining employees who may make defamatory statements in the future would require employers to determine, essentially, whether an employee is “fit to speak.” Employers would therefore be reluctant to hire any person who has engaged in controversial speech or conduct in the past, leading to a chilling effect on free speech.

We need not decide in this case whether recognition of a cause of action for negligent hiring or retention of an employee premised on the employee's defamatory statements would be consistent with first amendment principles or past Illinois precedent. Even if such a cause of action were cognizable, plaintiff's allegations in this case are not sufficient to state such a cause of action. We find that plaintiff's allegations are insufficient, as a matter of law, to impose liability on WRCX and Evergreen under a theory of negligent hiring or retention of Muller. In the context of this case, plaintiff's allegations fail to establish a sufficient nexus between the particular alleged unfitness of Muller and the injury suffered by plaintiff.

To successfully plead a cause of action for negligent hiring or retention, it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment. “There are many kinds of unfitness for employment that do not give rise to tort liability for negligent hiring [or retention].” 
Fallon v. Indian Trail School, Addison Township School District No. 4
, 148 Ill. App. 3d 931, 935 (1986). Rather, liability arises in this context when a 
particular
 unfitness of an employee gives rise to a particular danger of harm to third parties. See 
Giraldi v. Community Consolidated School District No. 62
, 279 Ill. App. 3d 679, 692 (1996); 
Fallon
, 148 Ill. App. 3d at 935. The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. 
Escobar v. Madsen Construction Co.
, 226 Ill. App. 3d 92, 94 (1992).

In this case, plaintiff alleges that he was injured by Muller's false, defamatory statements. Plaintiff was therefore required to plead facts showing that WRCX and Evergreen knew or should have known that Muller was likely to make false, defamatory statements during his radio show if he was hired. Plaintiff's complaint lists a number of incidents of prehiring and post-hiring conduct by Muller and, from these incidents, draws the conclusion that defendants knew or should have known that Muller would make false, defamatory statements on the air. None of the examples of Muller's prior conduct listed by plaintiff, however, involved his making false, defamatory statements. The mere fact that Muller had previously engaged in offensive or outrageous conduct during his radio programs does not establish that he had a propensity to make false, defamatory statements. The only thing defendants could have known about Muller from these prior incidents was that he had engaged in outrageous and offensive conduct. We hold that this conduct was not sufficient to put defendants on notice that Muller would make false, defamatory statements on the air if WRCX and Evergreen hired him.

The appellate court in 
Giraldi v. Community Consolidated School District No. 62
, 279 Ill. App. 3d 679, 692 (1996), reached a similar conclusion. Therein, the plaintiff sued a school district for negligent hiring based on its employment of a school bus driver who sexually abused a student. The driver's prior work history showed only that he had a tendency to run late. The appellate court upheld the trial court's refusal to submit the negligent-hiring claim to the jury because there was “no evidence that [the employer] knew or should have known that the hiring of [the driver] would create a danger of harm to third persons.” 
Giraldi
, 279 Ill. App. 3d at 692. The only knowledge the employer could have drawn from the driver's history was that he had a tendency to be late. The court noted that there was no “factual or logical relationship” between that knowledge and the driver's assault of the student. Thus, even if the school district was negligent in hiring a bus driver who often ran late, 
that
 negligence did not proximately cause the plaintiff's injury. 
Giraldi
, 279 Ill. App. 3d at 692. Similarly, in 
Fallon v. Indian Trail School, Addison Township School District No. 4
, 148 Ill. App. 3d 931, 935 (1986), a student was injured on a trampoline during physical education class. The plaintiff sued the school for negligently hiring two physical education teachers. The plaintiff did not allege specific characteristics of the teachers which made them unfit for their positions, but alleged simply that they were “not qualified” for their positions. The appellate court upheld the dismissal of the negligent-hiring claim, finding that this general allegation of unfitness did not suffice to establish that the teachers had a “particular unfitness” which created a particular danger of harm to third persons. 
Fallon
, 148 Ill. App. 3d at 935-36.

Plaintiff urges us to hold that Muller's prior “outrageous and irresponsible” conduct was sufficient to put defendants on notice that he would defame people on his radio show. We decline to do so. The type of prior conduct by an employee which will be sufficient to put an employer on notice that the employee is unfit for a particular position will differ in every case. In this case, we employ a narrow interpretation of this requirement because of the first amendment concerns which arise when liability is predicated on speech. Although we do not decide in this case whether first amendment concerns would preclude all attempts to state a cause of action for negligent hiring or retention premised on an employee's defamatory statements, we do find that recognition of this cause of action where the employee had previously engaged only in “outrageous,” but nondefamatory, conduct or speech would run afoul of first amendment principles. The most obvious impact of this rule would be on media employers. Plaintiff's theory would thus hold a media employer liable for its decision to hire or retain a broadcaster simply because that broadcaster was a controversial figure, the reasoning being that such controversial figures are “likely” to engage in defamatory speech. Such a holding would have an inevitable chilling effect on free speech, as media employers would be reluctant to hire controversial broadcasters or reporters. The law of defamation must not only protect the individual's interest in vindicating his good name and reputation, but also allow the first amendment guarantees the “ `breathing space' essential to their fruitful exercise.” 
Chapski v. Copley Press
, 92 Ill. 2d 344, 351-52 (1982), citing 
New York Times Co. v. Sullivan
, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). Imposing liability for negligent hiring or retention under these circumstances would not grant the first amendment guarantees sufficient “breathing space.” Whether we would ever recognize a cause of action for negligent hiring or retention based on an employee's defamatory statements is not decided in this case. We hold only that this cause of action may not be premised solely on allegations that an employer hired an employee who had previously engaged in controversial, but nondefamatory, speech or conduct.

Accordingly, we hold that plaintiff's allegations in this case are insufficient to state a cause of action against WRCX or Evergreen for negligent hiring or retention of Muller. The circuit court therefore properly dismissed counts V through VIII of plaintiff's complaint.

CONCLUSION

For the foregoing reasons, we affirm the appellate court holding reversing the dismissal of count II of plaintiff's complaint. We reverse the appellate court holding reversing the dismissal of counts V, VI, VII, and VIII of plaintiff's complaint. The circuit court's dismissal of counts V, VI, VII, and VIII is affirmed. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

Appellate court judgment affirmed in part

and reversed in part;

circuit court judgment affirmed

in part and reversed in part;

cause remanded.