No. 2--00--0032 

_________________________________________________________________

IN THE

                   APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

KIMBERLY A. PLATSON,  ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellant,
       )

                                )

v.
                              )  No. 99--L--0288

 )

NSM, AMERICA, INC.,
            )

                                )    

     Defendant-Appellee
 )
 Honorable

                                )  Robert K. Kilander,
 
 

(Mark Eigenbauer, Defendant).
   )  Judge, Presiding
. 
              
_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court
: 
  

Plaintiff, Kimberly A. Platson, appeals the judgment of the circuit court granting the motion to dismiss of defendant NSM, America, Inc. (NSM)
, under section 2--615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 1998)).  We reverse.  

BACKGROUND  

Plaintiff filed a complaint on March 12, 1999, alleging that, while employed by NSM through a work-study program offered through her high school, she was physically assaulted on NSM's premises by defendant Mark Eigenbauer, then an employee of NSM.  In counts I through IV, plaintiff pleaded causes of action against Eigenbauer for, respectively, assault, battery, false imprisonment, and intentional infliction of emotional distress.  On NSM's motion, the trial court dismissed without prejudice counts V, VI, and VII of the complaint against NSM, alleging, respectively, vicarious liability, negligent supervision, and breach of contract.  On March 12, 1999, plaintiff filed an amended complaint against NSM.  Counts V through IX alleged, respectively, negligent supervision, assault, battery, false imprisonment, and intentional infliction of emotional distress.  

The relevant factual allegations in the complaint are as follows.  NSM, whose principal place of business is located in the Village of Bensenville, Du Page County, Illinois, sells juke boxes, among other items.  In June 1996, plaintiff, then a 16-year-old student at Lake Park High School, began part-time employment with NSM as part of a work-study program offered by her school.  NSM had voluntarily agreed to participate in the program.  NSM executed a document titled "Cooperative Education Agreement" (CEA).  The CEA requires the employer and the student's teacher-coordinator to "design a training program for the student based on the student's job description" and to "periodically evaluate the student's progress."  According to the CEA, the student earns wages as well as "job credit" through the employment.  The CEA provides that the work site, referred to as the "training station," is "an extension of Lake Park High School" and that the student is bound by the rules and regulations of the school and by the policies of the training station.  The CEA refers to the student as the "student-learner."  The CEA further provides that the employer is to notify the teacher-coordinator of a change in the student's progress.  Also, unless permitted by the teacher-coordinator, the student may not work on days the student is absent from school.  Finally, the CEA states that the employer is to "provide adequate supervision at all times and safety training according to industry standards."  Plaintiff incorporated a copy of the agreement into her complaint.

When she began working for NSM, plaintiff was assigned to administrative duties including office and clerical work.  Based on plaintiff's satisfactory performance of these duties, NSM assigned her to the marketing department around August 1996.  Beginning around November 1996 NSM's employee, Eigenbauer, would "from time to time" approach plaintiff while she was performing her job duties on NSM's premises and "with his hands touch [plaintiff's] body."  The touching "included rubbing and massaging [plaintiff's] shoulders."  Eigenbauer would also on occasion "intentionally brush his body against Plaintiff's body" while she was performing her job duties.  A total of at least five supervisors and employees, including plaintiff's supervisor, witnessed the touching.  Eigenbauer "did not touch the bodies of other employees" of NSM.  It was "well known" throughout the office in which plaintiff worked "that Eigenbauer repeatedly sought out Plaintiff to touch her."  At no time did plaintiff tell her supervisor or any other employee of NSM "that Eigenbauer's touching of her was appropriate, welcome or acceptable."  At no time did plaintiff's supervisor demand that Eigenbauer stop the touching.       

Despite NSM's "knowledge of the inappropriate conduct by Eigenbauer," plaintiff's supervisor scheduled her to work alone with Eigenbauer on March 13, 1997.  At work that evening, Eigenbauer approached plaintiff while she was on break in the warehouse area and "physically grabbed her."  Plaintiff freed herself and returned to her office.  Eigenbauer followed plaintiff into her office and stood by her desk, blocking her exit from the office.  Eigenbauer then "grabbed plaintiff's waist and pulled her toward him, causing plaintiff to fall to the floor on her knees."  He then grabbed plaintiff from behind, "forced himself on top of her and pressed himself against her."

Plaintiff freed herself and attempted to leave the room, but Eigenbauer physically blocked the exit.  Plaintiff managed to get around Eigenbauer and sought to leave the building.  Blocking the  exterior door, Eigenbauer told plaintiff that he wanted to lock her in to prevent her from leaving.  Plaintiff managed to leave but, due to the physical and emotional trauma caused by the attack, did not return to work until March 19, 1997, at which time she reported the attack to one of her supervisors. 

In count V (negligent supervision), plaintiff alleges that NSM failed to fulfill its duty to supervise its employees in scheduling plaintiff to be alone with Eigenbauer, leading to an attack that was foreseeable to NSM given its knowledge of Eigenbauer's prior inappropriate physical touching of plaintiff.  In counts VI through IX, plaintiff alleges three alternative bases upon which to hold NSM liable for Eigenbauer's intentional torts.  First, plaintiff maintains that NSM's agreement to employ plaintiff, a minor and a high school student, in a work-study program and to supervise her at all times created between plaintiff and NSM what tort law recognizes as a "special relationship," according to which NSM had a duty to protect plaintiff from Eigenbauer's acts including certain acts committed outside the scope of his employment.  Second, plaintiff contends that, because NSM knew or should have known that Eigenbauer posed a threat to plaintiff, NSM had a duty under section 317 of the Restatement (Second) of Torts (Restatement (Second) of Torts §317 (1965)) to exercise reasonable care to prevent its employee, Eigenbauer, from intentionally harming plaintiff.  Third, plaintiff argues that, because NSM agreed to supervise plaintiff and thus "voluntarily undertook a duty to protect [her] during the course of her employment," NSM had a duty under section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts §324A (1965)) to exercise reasonable care to protect plaintiff.

On NSM's motion under section 2--615 of the Code, the court dismissed counts V through IX.  Finding that the foreseeability of Eigenbauer's March 13 assault was an element of each count, the court held that the complaint's allegations did not demonstrate that Eigenbauer's touching of plaintiff put NSM on notice that Eigenbauer might commit an assault such as occurred on March 13, 1997.  The court reasoned that because the "touching" described in the complaint was not "obviously offensive" but could mean "any number of things," such as "shak[ing] [plaintiff's] hand" or "taking her by the elbow and handing her a cup of coffee," it was not sufficient to warn  NSM of the danger Eigenbauer posed to plaintiff. 

On appeal, plaintiff argues that, by finding her complaint failed to state a cause of action because the "touching" she described could have been innocent touching, the trial court erroneously viewed her complaint in the light least favorable to her.  Plaintiff generally argues that, when properly viewed in accordance with section 2--615, her complaint adequately pleads  that NSM knew or should have known Eigenbauer had been touching her inappropriately and that NSM was remiss for failing to protect her from Eigenbauer.  Specifically, plaintiff asserts she was not required to allege that she informed NSM of her objection to Eigenbauer's touching in order to state a cause of action.     

NSM replies that plaintiff failed to state a cause of action for negligent supervision or for failure to control an employee under section 317 because she did not allege facts showing that Eigenbauer's assault was foreseeable to a reasonable person.  NSM asserts that plaintiff's specific failure was in not alleging that she found Eigenbauer's prior touching objectionable and that she had communicated her objection to her supervisor.  NSM also argues that there was no special relationship between plaintiff and NSM because the CEA obligated NSM to oversee the quality of plaintiff's work, not to insure her safety.  For the same reason, NSM submits, plaintiff failed to state a cause of action under section 324A.  NSM argues that plaintiff failed to bring a claim under section 324A for the additional reason that, even if the CEA could be construed to impose on NSM a duty to protect, NSM could not have assumed a duty to protect plaintiff against Eigenbauer's physical advances toward plaintiff, of which it necessarily had no knowledge at the time it executed the CEA.

ANALYSIS 

A section 2--615 motion attacks the legal sufficiency of a complaint.  The dismissal of a count in a complaint for legal insufficiency is appropriate under section 2--615 only if, when viewed in a light most favorable to the opposing party, the factual allegations underlying the count are insufficient to state a cause of action upon which relief can be granted.  
Abbasi v. Paraskevoulakos
, 187 Ill. 2d 386, 391 (1999).  A claim should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover under that claim.  
Abbasi
, 187 Ill. 2d at 391. 

In other words, if the pleadings put into issue one or more facts material to recovery under a claim, evidence must be taken to resolve such issues, and judgment dismissing that claim on the pleadings is not appropriate.  
In re Estate of Davis
, 225 Ill. App. 3d 998, 1000 (1992).  A claim need only show a possibility of recovery, not an absolute right to recovery, to survive a section 2--615 motion.  
American Environmental, Inc. v. 3-J Co.
, 222 Ill. App. 3d 242, 248 (1991).  Review of a section 2--615 dismissal is 
de novo
.  
Abbasi
, 187 Ill. 2d at 391.       

We address first the sufficiency of plaintiff's claim of negligent supervision.  To succeed in an action for negligent supervision, the plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury.  
Van Horne v. Muller
, 185 Ill. 2d 299, 313 (1998); 
Mueller v. Community Consolidated School District 54
, 287 Ill. App. 3d 337, 342-43 (1997).  To satisfy the element of proximate causation, the plaintiff must demonstrate a "tangible connection" between the employee's particular unfitness for the job and the resulting harm to the plaintiff.  
Carter v. Skokie Valley Detective Agency, Ltd.
, 256 Ill. App. 3d 77, 83 (1993).  That is, the particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position.  
Van Horne
, 185 Ill. 2d at 313.  Generally, the existence of proximate cause is a question of fact for the jury.  
Nowak v. Coghill
, 296 Ill. App. 3d 886, 892 (1998).   We conclude plaintiff has alleged sufficient facts to establish a possibility of recovery for negligent supervision.  Plaintiff alleges that her supervisor witnessed Eigenbauer touch her on several occasions.  Eigenbauer would rub and massage plaintiff's shoulders and intentionally brush his body against hers.  Plaintiff avers that Eigenbauer did not similarly treat other employees of NSM and that it was known throughout the office in which plaintiff worked that Eigenbauer's advances were focused on plaintiff.  Despite this knowledge, NSM made no attempts to correct Eigenbauer's conduct but in fact scheduled her to work alone with Eigenbauer, creating a setting in which Eigenbauer could assault plaintiff unobserved by a third party.  We conclude that, if developed through the proof process, these allegations clearly could establish NSM's liability for negligent supervision. 

   NSM cites no authority for its claim that plaintiff's claim of negligent supervision is insufficiently pleaded due to her failure to allege positively that she objected to Eigenbauer's touching or that she communicated to her supervisor that she considered the touching objectionable.  Indulging plaintiff with every reasonable inference, and given the circumstances in which the touching occurred, the dispositive question is not whether plaintiff vocalized her objection to Eigenbauer's touching.  Young and vulnerable, a 16-year-old work-study student subjected to unwanted physical advances by a fellow employee might, for a number of reasons (whether sound or unsound), be disinclined to speak up.  Indeed, whether someone of plaintiff's age and status would even have the capacity to consent to such advances is a matter for debate.  Certainly, given the context, the impropriety of a male employee's repetitive massage and rubbing of the shoulders of a 16-year-old female fellow employee and his intentional brushing of his body against hers could be evident readily to the adults, including plaintiff's supervisor, who witnessed it firsthand, even if not to the 16-year-old female employee herself.  In other words, the failure of plaintiff, a child, to recognize the inappropriateness of Eigenbauer's conduct and thus be on notice of its dangerous potential is not dispositive of the factual question of whether adults who witnessed the conduct would have been placed on notice of the potential danger.  It is reasonable to infer that, whatever plaintiff's reticence during the period in which the touching occurred, NSM was fully aware that Eigenbauer was singling out plaintiff for improper advances.  Further, plaintiff's allegation that Eigenbauer engaged in such objectionable conduct in full view of supervisors and other employees permits the reasonable inference that NSM should have known that Eigenbauer was capable of worse if left alone with plaintiff. We conclude that plaintiff has adequately alleged a cause of action for negligent supervision based on NSM's failure to take reasonable measures to protect plaintiff from Eigenbauer once NSM was aware of Eigenbauer's inappropriate touching of plaintiff.

The previous discussion also is relevant to NSM's challenge to plaintiff's claim under section 317.  Section 317 provides that an employer may, in certain circumstances, be held liable for the harm caused by an employee acting outside the scope of his employment.  
Escobar v. Madsen Construction Co.
, 226 Ill. App. 3d 92, 95 (1992).  Section 317 provides in relevant part: 

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant 

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or  

(ii) is using a chattel of the master, and 

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and 

(ii) knows or should know of the necessity and

opportunity for exercising such control."

Restatement (Second) of Torts §317 (1965).

Illinois courts have adopted this rule.  
Kigin v. Woodmen of the World Insurance Co.
, 185 Ill. App. 3d 400, 403 (1989) (complaint under section 317 properly alleged that defendant's failure to prevent an intoxicated 41-year-old camp counselor from venturing off into the woods at 11 p.m. with a 15-year-old female camp guest after providing her with alcohol made defendant responsible for the sexual molestation that occurred subsequently).     

We determine plaintiff has alleged facts that, if proved, would entitle her to relief under section 317.  First, plaintiff alleges that Eigenbauer was employed by NSM when he assaulted plaintiff on NSM's premises.  Second, one reasonably can infer from plaintiff's allegations that NSM was aware that plaintiff was the object of Eigenbauer's inappropriate physical advances.  NSM thus had reason to know that Eigenbauer was likely to repeat such conduct, or engage in worse, if left alone with plaintiff while on work premises.  Third, it is reasonable to infer that NSM could have taken measures to control Eigenbauer, including reprimanding or disciplining him.  At the very least, NSM could have avoided scheduling plaintiff and Eigenbauer to work alone together on NSM's premises.  Nonetheless, NSM created a situation in which Eigenbauer could, and allegedly did, assault plaintiff while they were alone on NSM's premises.  Plaintiff has properly stated a cause of action under section 317.

   We also hold that plaintiff has stated a cause of action against NSM based on the "special relationship" doctrine.  Generally, a person is not liable for harm to another resulting from the person's failure to defend the other against a third party's criminal attack.  
Siklas v. Ecker Center for Mental Health, Inc.
, 248 Ill. App. 3d 124, 130 (1993).  As recognized by 
Eversole v. Wasson
, 80 Ill. App. 3d 94, 96-97 (1980), cited by plaintiff, an exception to this general rule exists where the plaintiff bore a "special relationship" to the defendant when the attack by the third party occurred.  See also 
Hernandez v. Rapid Bus Co.
, 267 Ill. App. 3d 519, 524 (1994).  A special relationship exists where, 
inter alia
, one voluntarily takes custody of another so as to deprive the other of his normal opportunities for protection.  Restatement (Second) of Torts §314A(4) (1965); see also 
Fancil v. Q.S.E. Foods, Inc.
, 60 Ill. 2d 552, 560 (1975).  
Even a person bearing a special relationship to another has a duty to protect that person only from reasonably foreseeable attacks by third parties.  
Hernandez
, 267 Ill. App. 3d at 524.  

What it means to "take custody of another" or "deprive another of his normal opportunities for protection" is not made obvious by the language of section 314A(4).  There are very few cases in Illinois applying section 314A(4).  In 
Doe v. Goff
, 306 Ill. App. 3d 1131, 1134-36 (1999), the court affirmed the trial court's summary judgment on the plaintiff's claim that the defendant, the Boy Scouts of America, was liable as a voluntary custodian for a Boy Scouts volunteer's molestation of the plaintiff during a Boy Scouts camping trip.  The court held that the plaintiff had raised a question of fact as to whether defendant was plaintiff's voluntary custodian for the camping trip but not as to whether the molestation was reasonably foreseeable to the defendant.  
Goff
, 306 Ill. App. 3d at 1134.  In 
Hernandez
, 267 Ill. App. 3d at 524, the court held that the plaintiff had not raised a question of fact as to whether the defendant, a bus company, positioned itself as a section 314A(4) voluntary custodian to the plaintiff's daughter, a special education student, by instituting a change in its bus route that resulted in the inability of the daughter's regular attendant to be present on the defendant's bus when the defendant dropped the daughter off at school and to escort her into the building.  The court observed that, under the facts alleged, the defendant did not deprive the plaintiff's daughter of her normal opportunities for protection because the regular attendant could have arranged her own transportation to assure her presence at the bus stop or could have requested her supervisor to assign a different attendant to the plaintiff's daughter.  
Hernandez
, 267 Ill. App. 3d at 523-24.

These cases do not elaborate section 314A(4)'s definition of the so-called "voluntary custodian/protectee" relationship.  Nor have we found much persuasive authority from outside this jurisdiction.  We do find helpful some observations by the Ohio court of appeals in 
Slagle v. White Castle Systems, Inc.
, 79 Ohio App. 3d 210, 607 N.E.2d 45 (1992).  In 
Slagle
, plaintiffs claimed that the defendant employer had assumed the status of a voluntary custodian to their son, a minor, simply by employing him.  The court held that the employment relationship did not alone create a custodial relationship under section 314A(4).  
Slagle
, 79 Ohio App. 3d at 217, 607 N.E.2d at 49-50.  The court observed that to assume custody of a child is to stand "
in loco parentis
 to the child, accepting all the rights and responsibilities that go with that status."  
Slagle
, 79 Ohio App. 3d at 217, 607 N.E.2d at 49; see also 
Donaldson v. Young Women's Christian Ass'n
, 539 N.W.2d 789, 792 (Minn. 1995) ("Typically, the plaintiff [in a section 314A(4) relationship] is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare").  Thus, 
"[t]o establish a custodial relationship between an employer and a minor employee, there must be proof that the employer voluntarily assumed the additional responsibilities of a custodian towards the child."  
Slagle
, 79 Ohio App. 3d at 217, 607 N.E.2d at 50.  A custodial relationship between employer and employee extends "far beyond the degree of control and supervision typically exercised by an employer over a minor employee."  
Slagle
, 79 Ohio App. 3d at 217, 607 N.E.2d at 50. 

Clearly, the CEA does not definitely establish that NSM voluntarily took custody of plaintiff for purposes of section 314A(4) during the time she was on NSM's premises working for it.  Nor, however, is the possibility foreclosed by the CEA.  NSM voluntarily employed plaintiff pursuant to a work-study program and promised adequately to supervise her at all times.  NSM claims that the CEA's supervision requirement merely is a measure to insure the quality of the student's work.  "Supervision" obviously is not so limited by definition, and NSM cites no contextual limitation to support its position.  Indeed, the fact that the provision for supervision is linked with the provision for "safety training" in that both appear in the same sentence raises a legitimate question of whether the employer's supervision of the work-study student at least is to insure the safety of the student in addition to the quality of her work.  NSM's interpretation of the CEA is undermined further by the fact that the necessity of supervision to monitor the work-study student's work quality already is implied in the CEA's requirement that the employer and the teacher-coordinator evaluate the student's work.  Thus, the supervision requirement in the CEA reasonably can be interpreted as a measure to insure the work-study student's safety. 

This provision for the work-study student's protection is in keeping with the nature of the work-study program at Lake Park High School.  The CEA leaves little doubt that the student's employment through the work-study program is an educational exercise.  The CEA refers to the student participant in the work-study program as a "student-learner" and the employer's workplace as a "training station" and an "extension" of the student's school.  Moreover, the CEA provides that a student generally is not permitted to work on days the student is absent from school. 

We believe, then, that by participating in Lake Park High School's work-study program and signing the CEA an employer assumes the delicate charge of mentoring a student in the world of work.  A work-study student is vulnerable not only because of age and inexperience.  In addition to the power possessed by any employer over its employee, the work-study employer has the power to affect the student's academic standing through its evaluation of the student's work performance.  According plaintiff the benefit of every reasonable inference, we assume that when NSM assigned plaintiff to work alone with Eigenbauer it was enjoying a disparity of power between itself and a student-employee who was subject to the combined pressures of work and school.  This disparity, we further infer, may have disinclined plaintiff from protesting or attempting to avoid working with Eigenbauer outside the presence of third parties who might have protected her from him.  Therefore, given the nature of plaintiff's alleged work situation, we hold that plaintiff has adequately alleged that NSM took custody of her as defined by section 314(A)(4) and did not leave her avenues for self-protection as the defendant did the victim in 
Hernandez
.  We further hold that plaintiff has adequately alleged that NSM failed to exercise reasonable care in protecting her from Eigenbauer's attack.  

We conclude, therefore, that plaintiff has stated a cause of action based on NSM's alleged custodial relationship with plaintiff as defined by section 314A(4).

Also for the reasons stated above, we hold that plaintiff has stated a cause of action under another exception to the general rule that one cannot be held liable for failing to protect another from criminal attack by a third person.  This exception is provided by section 324A, which has been adopted by Illinois courts (
Scott & Fetzer Co. v. Montgomery Ward & Co.
, 112 Ill. 2d 378, 390  (1986)) and states in pertinent part:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if 

***

(b) he has undertaken a duty owed by the other to the

third person."  Restatement (Second) of Torts §324 A (1965).

Hernandez
, 267 Ill. App. 3d 519, cited by plaintiff and discussed above, illustrates the application of section 324A.  In 
Hernandez
, a girl, B.H., was raped by a fellow special education student while she walked unescorted from one of the defendant bus company's buses to her school.  Suing on behalf of the girl, the plaintiff alleged that the defendant bus company was providing busing services under a contract with the Chicago Board of Education (Board) at the time of the attack.  The plaintiff further alleged that, due to a change in the defendant's bus route, the Board's child welfare attendant who normally escorted B.H. and her fellow students from the bus into the school had to get off at a prior stop on the day of the attack and was not on the bus when B.H. and her assailant were dropped off.  The plaintiff averred that the defendant's supervisor, knowing that the attendant would not be available to escort B.H. and the other students into the school that day, told the attendant that the defendant's driver would take B.H. and the other students to their school in the attendant's absence.   The plaintiff alleged that, after dropping off B.H. and the other students, the driver informed the attendant that she made sure that the students went into the school building.  The plaintiff also alleged that, when it agreed to supervise and escort the students on B.H.'s bus, the defendant knew that several of the students had violent propensities.  

The trial court granted defendant's motion for summary judgment.  The court found that, because the plaintiff did not allege that the defendant knew of the violent proclivities of the particular special education student who would attack B.H., the plaintiff failed to raise a material factual question of whether the attack on B.H. was foreseeable to the defendant.  
Hernandez
, 267 Ill. App. 3d at 525.  

The appellate court reversed, holding that plaintiff did not raise a question of fact as to whether there existed a section 314A(4) "special relationship" between B.H. and the defendant but did raise a question of fact as to whether defendant assumed a section 324A duty to protect B.H.  The court first noted that, through the employment of child welfare attendants, the Board  assumed the duty to supervise B.H. and the other special education students being transported on defendant's bus and to escort them to the door of their school.  The court inferred from the record that, based on the attendant's conversation with the defendant's supervisor and its bus driver, the defendant, knowing that the attendant on that bus would be absent, voluntarily assumed the duty to supervise B.H. and the other special education students while transporting them and to escort them from the bus to the school that morning.  
Hernandez
, 267 Ill. App. 3d at 525.  The court also held that the trial court erred in finding that the foreseeability of B.H.'s attack hinged on defendant's knowledge of the violent tendencies of the particular special education student who attacked B.H.  
Hernandez
, 267 Ill. App. 3d at 525.  The court declared that it was not necessary that the defendant have foreseen the "precise harm that did in fact occur."  
Hernandez
, 267 Ill. App. 3d at 525.  Rather, the court explained, "it is sufficient if at the time of the defendant's action or inaction, a reasonably prudent person should have foreseen some harm to another as likely to occur."  
Hernandez
, 267 Ill. App. 3d at 525-26.    

We find that plaintiff has properly alleged that NSM, like the bus company in 
Hernandez
, agreed to render services to another that NSM should have recognized were necessary for the protection of a third person and that this rendering of services included the performance by NSM of a duty owed by the other to the third person.  NSM does not dispute that it was rendering services to Lake Park High School by participating in the work-study program or that the high school had a duty to protect plaintiff. (The parties do not address the extent of the school's duty to protect plaintiff and neither do we.)  Instead, NSM claims that its participation in the work-study program did not entail a duty to protect plaintiff.  As explained above, this assertion is belied by the CEA's requirement that NSM provide adequate supervision over the student employee at all times reasonably could be interpreted as NSM's assumption of the school's duty to protect plaintiff.  Plaintiff's allegations also permit the reasonable inference that NSM violated this duty to protect in scheduling plaintiff to work alone with Eigenbauer despite knowing that Eigenbauer had improperly touched plaintiff on NSM's premises on several occasions.  

NSM also argues that, even if it assumed a general duty to protect plaintiff in signing the CEA, it could be responsible only for defending plaintiff against dangers of which it then was cognizant and it necessarily had no knowledge of Eigenbauer's physical advances towards plaintiff when it executed the CEA.  We find no such limitation on liability in the text of section 324A.  The only support defendant offers for this notion is its observation that, in 
Hernandez
, the bus company knew when it agreed to supervise the special education students that some of them had violent proclivities.  There is no indication of an explicit or implicit holding in 
Hernandez
 that section 324A imposes liability only for a party’s failure to avert a danger of which it had knowledge when it undertook the duty to protect, and we refuse to render such a holding.  One reasonably can infer from plaintiff’s allegations that NSM’s duty to protect plaintiff under the CEA encompassed dangers of which NSM had no knowledge when it signed the CEA.  We hold, therefore, that section 324A would impose liability for NSM’s failure to protect plaintiff against such dangers provided they were reasonably foreseeable when NSM’s omission occurred. 

Based on the foregoing, we hold that the trial court improperly dismissed counts V through IX of plaintiff's amended complaint.  

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings. 

   Reversed and remanded.    

BOWMAN and RAPP, JJ., concur.